UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA ANTHONY, | ) | Case No. 1:17CV2152 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER BOYKO |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Amanda Anthony ("Anthony" or "claimant") challenges the final decision of

Defendant Commissioner of Social Security ("Commissioner"), denying her applications for a

period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income

("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.*

("Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the

undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule

72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge

recommends that the Commissioner's final decision be vacated and remanded.

I.  PROCEDURAL HISTORY

On January 12, 2010, Anthony filed an application for a period of disability and DIB,

and, on February 3, 2010, she filed an application for SSI benefits—both applications alleged

disability beginning January 4, 2008.  (R. 11, Transcript ("tr."), at 11, 135-138, 158-168.)

Anthony listed the conditions that limit her ability to work as: "knee problems, problems with

math, spelling and reading."  (*Id.* at 162.)  Anthony's applications were denied initially and upon reconsideration (*id.* at 84-85, 86-87).  She then requested a hearing before an Administrative Law Judge ("ALJ"), participated in the hearing on November 23, 2011, was represented by counsel, and testified.  (*Id.* at 32-83.)  The claimant's husband also testified.  (*Id.* at 65-71.)  A vocational expert ("VE") attended the hearing and testified.  (*Id.* at 36, 71-81.)  On December 20, 2011, the ALJ found Anthony not disabled.  (R. 11, tr. at 23.)  The Appeals Council denied Anthony's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.  (R. 11, tr., at 1-4.)

The district court vacated the decision on appeal and remanded for a new hearing and decision.  (*Id.* at 608-625; *Anthony v. Commissioner*, No. 1:13CV1237, 2014 WL 4249782 (N.D. Ohio Aug. 27, 2014).)  The court found that the ALJ did not properly assess Anthony's credibility, because the ALJ's credibility analysis was based solely on the finding that objective evidence did not support the claimant's allegations regarding the intensity, persistence, and limiting effects of her symptoms.  (R. 11, tr., at 621; *Anthony*, 2014 WL 4249782, at *7-*8.)  The court also found that the ALJ failed to comply with the applicable procedural requirements when conducting the credibility analysis.  (R. 11, tr., at 623; *Anthony*, 2014 WL 4249782, at *9; *see generally* 20 C.F.R. § 1529(c); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1040 (6th Cir. 1994); *Duncan v. Sec'y., HHS*, 801 F.2d 847, 853 (6th Cir. 1986).)

On March 24, 2015, the Appeals Council remanded the case to the ALJ for further proceedings consistent with the court's order; and, in addition, required the ALJ to consolidate that case with other pending claims for further consideration.  (R. 11, tr., at 645-649.)  Anthony had filed new applications on January 6, 2014, for a period of disability and DIB, and for SSI

benefits, claiming disability beginning December 21, 2011.  (*Id.* at 647, 702, 796-797.)  There, she alleged disability due to: "mood disorder, intermittent explosive disorder, bipolar disorder, mdd disorder, bad right knee."  (*Id.* at 702.)  The applications were denied initially and again on January 6, 2015, after Anthony sought reconsideration claiming she was disabled "due to knee problems, vision loss, anger issues, mood disorder, bipolar and depression."  (*Id.* at 769, 776.)

The same ALJ held a new hearing on October 6, 2015.  (*Id.* at 534-578.)  Anthony participated in the hearing, was represented by counsel, and testified.  (*Id.* at 536-566.)  A new VE participated and testified.  (*Id.* at 536, 568-577.)  On January 14, 2016, the ALJ issued the second decision, applying the standard five-step sequential analysis to determine whether Anthony was disabled.  (R. 11, tr., at 499-521; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a).)  The ALJ again concluded Anthony was not disabled.  (*Id.* at 500, 521.)

The Appeals Council denied Anthony's request for review, and the ALJ's decision became the Commissioner's final decision.  (*Id.* at 490-493.)  Anthony seeks judicial review pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing.  Anthony's case focuses on "[w]hether the ALJ properly consider[ed] the medical opinions of State agency medical consultants Dr. Bolz and Dr. Klyop."  (R. 15, PageID #: 1776.)  She argues that the ALJ committed error by not considering the visual limitations assessed by these consultants in the decision or residual functional capacity determination.

## II.  PERSONAL BACKGROUND INFORMATION

Anthony was born in 1980 and was 27 years old on the alleged disability onset date.  (R. 11, tr., at 135, 519, 536.)  Accordingly, she was considered a younger individual age 18-44 for Social Security purposes.  *See* 20 C.F.R. §§ 404.1563, 416.963.  She has a limited education, can

communicate in English, and has past work as a finisher in the plastics and fiberglass industries as well as an assembler.  (R. 11, tr., at 41, 53, 73, 161, 519.)

### III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Anthony's brief alleging error by the ALJ.  As stated above, Anthony filed applications for a period of disability and DIB on January 12, 2010, an application for SSI benefits on February 3, 2010, and new applications for both DIB and SSI on January 6, 2014.  (R. 11, tr., at 11, 135-138, 796-797.)  Because her sole assignment of error concerns the ALJ's assessment of the opinions and visual limitations offered by state agency consultants, Dr. Bolz and Dr. Klyop (R. 15, PageID #: 1776-79), the court will primarily focus on the evidence related to their opinions.

On December 2, 2011, Alexander Taich, M.D., performed an eye exam of Anthony that indicated 20/200 uncorrected vision and 20/20-2 with glasses.  (R. 11, tr., at 502, 1262; R. 15, PageID #: 1768; R. 16, PageID # 1784.)  The doctor noted a possible cataract in her right eye.  (R. 11, tr., at 1262.)  Dr. Taich also noted possible Keratoconus ("KCN") in both eyes and recommended an evaluation by a cornea specialist at Cole Eye Institute.  *Id.*

On August 6, 2014, Anthony presented to internist Dorothy A. Bradford, M.D., for a physical consultative examination at the request of the state agency.  (R. 11, tr., at 513, 1438.)  Dr. Bradford identified "mental problems" as the chief complaint.  (R. 11, tr., at 1438; R. 15, PageID #: 1773.)  In addition, Anthony reported to Dr. Bradford that she had a history of "mental

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

problems, but also has right knee pain." (R. 11, tr., at 1438.) She reported that she has had three surgeries, cannot bend or squat, and occasionally uses a cane on the right side. *Id.* Anthony also reported she wears corrective lenses and has total loss of vision in the left eye. *Id.*

Dr. Bradford's indicated that with "lens" Anthony had 20/40 vision in the right eye ("OD"), was blind in the left eye ("OS") and had 20/40 vision with both eyes ("OU"). (R. 11, tr., at 1439.) The doctor noted "pupils equal and normally reactive to light and accommodation. Irises appear normal bilaterally." *Id.* Also, "Red reflex was present in both eyes, fundus poorly visualized bilaterally." *Id.* Anthony denied light perception in her left eye. *Id.*

On mental examination, Anthony exhibited appropriate judgment and insight, was oriented to person, place, and time, and had normal recent and remote memory. (R. 11, tr., at 1440.) Her mood and affect were appropriate, and her language and speech were normal. *Id.* Dr. Bradford assessed Anthony with degenerative joint disease of the right knee, although she noted the claimant did not depend on an ambulatory aid. (R. 11, tr., at 1440.) Claimant's gait was antalgic, but she did "not appear to be a fall risk on any surface for any distance." *Id.* Dr. Bradford's assessment/plan noted Anthony "has loss of vision in her left eye for unknown reasons." *Id.* The doctor's medical opinion, however, offered only the following limitation: Anthony "should not stand or walk for more than one hour continuously." *Id.* Dr. Bradford did not assess any mental health issues or visual limitations.

State agency medical consultant William Bolz, M.D., completed a physical residual functional capacity assessment on August 11, 2014. (R. 11, tr., at 660-663.) He gave great weight to Dr. Bradford's opinion, noting the opinion was consistent with the exam findings. *Id.* at 660. In addition, Dr. Bolz did not adopt the Residual Functional Capacity findings from

ALJ's previous December 20, 2011, decision, because "the current objective evidence shows a new diagnosis of L[eft] eye vision loss, which results in additional limitations." *Id.* at 663.[2] Dr. Bolz's RFC considered claimant's degenerative joint disease in her knees, her degenerative disc disease, and left eye vision loss. *Id.* He assessed a range of light exertion, with the ability to stand or walk for a total of two hours, and to sit for about six hours, of an 8-hour workday. (R. 11, tr., at 661.) Anthony's ability to push or pull is limited in her right leg, although she can occasionally use foot controls with her right foot. *Id.* She can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. *Id.* She can frequently balance, and occasionally stoop, kneel, crouch, and crawl. *Id.* Dr. Bolz assessed visual limitations, specifically limited near and far acuity in the left eye, as well as limited depth perception and field of vision in the left eye. *Id.* at 662. Because Anthony does not have the visual fields to avoid hazards in the workplace, she must avoid all exposure to hazards. *Id.* at 662-663. Dr. Bolz relied, in part, on Dr. Bradford's consultative examination earlier that month. *Id.* at 663.

On reconsideration, state agency medical consultant Gerald Klyop, M.D., completed a physical RFC assessment for Anthony on December 17, 2014. (R. 11, tr., at 695-698.) Dr. Klyop adopted the entirety of Dr. Bolz's RFC assessment. *Id.*

During the October 6, 2015 hearing, the ALJ asked Anthony to "Tell me about your eye problems," but Anthony did not testify about blindness or vision problems in her left eye. (R. 11, tr., at 542.) Rather, Anthony testified she had extreme redness in her right eye, and she was

---

[2] Despite the record referencing vision loss in Plaintiff's *left* eye, her brief indicates that it "is actually Anthony's *right* eye [that] has 20/200 vision." (R. 15, PageID # 1772 (emphasis added.))

"supposed to be wearing contacts to help fix it," but she did not get them.  *Id.*  She stated several times this problem was with her right eye.  *Id.* at 542-543.  Anthony's testimony did not reference vision loss in her left eye.  *Id.*

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the January 14, 2016, decision:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since January 4, 2008, the alleged onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).

3.  The claimant has the following severe impairments:  degenerative joint disease of the knees, degenerative joint and disc disease of the spine, depression, borderline intellectual functioning, mood disorder, not otherwise specified, intermittent explosive disorder, personality  disorder with cluster B traits (20 C.F.R. 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary  work as defined in  20 CFR 404.1567(a) and 416.967(a) except: she can lift, carry, push, and pull 20 pounds occasionally, 10 pounds frequently. She can stand and walk 2 hours in an 8-hour workday and sit 6 hours of an 8-hour workday.  Standing is limited to no more than one hour at a time.  She can occasionally operate foot controls with the lower right extremity.  She could not use ladders, ropes or scaffolds and could only occasionally stoop, kneel, and crawl.  She can frequently balance.  She must avoid all hazards.  She retains the capacity to complete simple, repetitive tasks that do not require much interaction with others.  She is limited to relatively static work with infrequent changes that [can] be easily explained.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7.  The claimant was born on *** 1980, and was 27 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 4, 2008, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 11, tr., at 501-502, 505, 519-521.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. §§ 404.1505(a), 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§

404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004) (citing *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)); *see also* 20 C.F.R. § 416.920(a)(4).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)*. "Substantial

9

evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

Anthony challenges the ALJ's consideration of the medical opinions and visual limitations assessed by State agency medical consultants Dr. Bolz and Dr. Klyop.  (R. 15, PageID #: 1776-79; R. 15, PageID #: 1795.)  Although the ALJ gave their opinions "great weight," Anthony argues the decision did not consider the visual impairments and limitations they assessed.  According to Anthony, Dr. Bolz identified loss of visual acuity as a severe

medically determinable impairment, but the visual impairments assessed by the state agency medical consultants (limited near acuity, far acuity, depth perception, and field of vision impairment) are not referenced in the ALJ's decision and are not in the ALJ's RFC finding.  (R. 15, PageID #: 1778; *see also* R. 11, tr., at 505, 516, 658, 662-63, 697-98.)  The Commissioner responds that the claimant's vision issues are inconsistent in the record; and asserts, in any event, the ALJ's RFC accounted for the functional effects of a vision impairment by concluding Anthony must avoid all hazards.  (R. 16, PageID #:  1791-92.)

The ALJ, however, has the responsibility to review all the evidence in making his or her determinations.  20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).  An ALJ is required to evaluate all medical opinions, regardless of source, unless an opinion is a treating source's opinion entitled to controlling weight.  *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007) (ALJ must evaluate each medical opinion in the record); *Walton v. Commissioner*, 187 F.3d 639, 1999 WL 506979, at *2 (6th Cir. 1999) (TABLE, text in WESTLAW) (per curiam); 20 C.F.R. §§ 404.1527(c), 416.927(c).  State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence.  20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e).  The ALJ must then determine how much weight to give to each opinion.  *Id.*

Although the ALJ generally accords more weight to a treating source over those of a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source.  *See generally Ealy v. Commissioner*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith*, 482 F.3d at 875.  Generally, however, more weight is given to the opinion of an examining source over a non-examining source.  20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013).  The ALJ must consider any statements that

have been provided by medical sources, whether or not based on formal medical examinations.

20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source.  20 C.F.R. §§ 404.1527(c),(e), 927(c),(e); *see generally Gayheart*, 710 F.3d at 376; *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  While the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision.  *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

Anthony challenges the ALJ's assessment of agency medical consultants Dr. Bolz and Dr. Klyop.  The ALJ addressed Dr. Klyop's opinion[3] as follows:

> The state agency's physical medical examiner, Dr. Gerald Klyop, MD found that the claimant had severe physical conditions on December 17, 2014.  (Exhibit 13A/13). He found that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, sit about 6 hours in an 8-hour workday, stand and walk about 2 hours in an 8-hour workday, along with postural limitations consistent with the above residual functional capacity.  (Exhibits 13A/9-11).  This opinion is given great weight, as it is consistent with the record as a whole.  These are also findings from a specialist who reviewed the entire record and has knowledge of the disability program.

(R. 11, tr., at 516.)

_____

[3]  Dr. Klyop rendered his opinion on reconsideration (R. 11, tr., at 695-698), and adopted the entirety of Dr. Bolz's August 11, 2014, RFC assessment (*see* R. 11, tr., at 660-663).  The court does not find the ALJ's failure to mention Dr. Bolz's opinion to be material, because the two opinions are identical.

12

Although the ALJ assigned "great weight" to Dr. Klyop's opinion, the visual limitations that the doctor outlined in his physical RFC assessment were not referenced in the ALJ's decision or RFC determination.  (R. 15, PageID #: 1778; *see* R. 11, tr., at 505, 697-98.)  Neither Dr. Bolz nor Dr. Klyop examined Anthony, but they reviewed the record, which included Dr. Bradford's consultative exam.  (R. 11, tr. at 663, 698.)  They both assigned great weight to Dr. Bradford's medical source statement and found the "opinion is consistent with the exam findings."  *Id.* at 660, 695.  Dr. Klyop (and Dr. Bolz) determined that Anthony had limited near acuity, far acuity, and depth perception in her left eye, as well as a limited field of vision.  (R. 11, tr., at 662, 696-697.)  The doctors stated that Anthony does not retain the visual fields to avoid hazards in the workplace.  *Id.* at 662, 697.  The corresponding visual limitation they assessed was that Anthony should avoid "all exposure to hazards (machinery, heights, etc.)."  *Id.* at 663.

Dr. Bradford had noted that Anthony reported "a total loss of vision in the left eye."  (R. 11, tr., at 1438.)  She also conducted an eye exam and concluded with corrective lenses, Anthony's vision was 20/40 in her right eye, and "blind" in her left eye.  *Id.* at 1439.  While other indications appear normal,[4] Dr. Bradford did not express any doubt or disbelief about the claimant's eye condition, noting that Anthony "denie[d] light perception on the left."  *Id.*  Dr. Bradford's assessment included: "[Anthony] has loss of vision in the left eye for unknown

---

[4]  "Pupils equal and normally reactive to light and accommodation.  Irises appear normal bilaterally.  Red reflex present in both eyes."  *Id.* at 1439.  In addition, there are inconsistent statements regarding which eye has impaired vision (*see* n. 2, *supra*).  This court, however, does not weigh the evidence *de novo* or assess credibility, but must determine whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence.  *Blakley*, 581 F.3d at 405; *See also Richardson*, 402 U.S. at 401.

reasons." *Id.* at 1440.  However, Dr. Bradford assessed no specific limitations based on

Anthony's eye condition, simply concluding: "In my medical opinion she should not stand or

walk for more than one hour continuously," a limitation apparently based on her degenerative

joint disease of the right knee.  *Id.*  The ALJ's decision gave "some weight" to that medical

opinion and concluded that "despite reporting the claimant stated no light perception in the left

eye, the examiner gave no corresponding limitation to the claimant's ability to function.  This

lack of a corresponding limitation sheds some doubt as to whether the examiner believed that the

claimant's claim was credible."  (R. 11, tr. at 513.)

      Although Dr. Bradford did not assess specific visual limitations, her report was based on

a physical examination and was a basis for the visual limitations that Dr. Klyop and Dr. Bolz

outlined in their physical RFC assessments.  (R. 11, tr., at 663, 698.)  The ALJ's decision is

silent regarding any consideration of Anthony's visual limitations as expressed by Dr. Klyop and

Dr. Bolz.  *See generally* R. 11, tr., at 505-519.

      The ALJ's RFC discussion, however, referenced claimant's "eye issues" more generally.

(R. 11, tr., at 518-519.)  After finding that Anthony did not have severe vision-related

impairments, the ALJ stated: "After a complete review of the medical record, the claimant's own

reports and hearing testimony, the claimant is simply not credible in her complaint that her

limitations are disabling."  *Id.* at 517.  The majority of the discussion concerns claimant's

complaints of pain.  *Id.* at 517-519.  The ALJ then addressed the visual issue:

> Moreover, the claimant testified that she also has eye issues for which she wears
> glasses and may need surgery.  (Hearing Testimony October 6, 2015 at 10:15a.m).
> However, there is only one eye exam in the entire record from December 2, 2011.
> That exam showed that, while there are some issues with the left eye, with glasses
> the claimant's vision is 20/20-2.  (Exhibit 33F/11).  A note in May 2013, records
> state that the claimant does wear glasses.  (Exhibit 33F/10).  I also note that, while

14

> the claimant reported no light perception in her examination by Dr. Bradford in August 2014, the doctor's opinion of functioning made no mention of any visual limitation.  (Exhibit 36F/8.)  As a result, this is still another situation where the claimant's allegations are far in excess of what the medical evidence shows.

(R. 11, tr., at 518-519.)

It is simply incorrect to state that "there is only one eye exam in the entire record."  (R. 11, tr., at 518.)  While Dr. Bradford is an internist, not an eye specialist, she did conduct an eye exam as part of her physical exam of Anthony on August 6, 2014.  *See generally* R. 11, tr., at 1438-1440.  While the specialization of a medical source would be a proper consideration when weighing medical opinions, *Gayheart*, 710 F.3d at 376, the ALJ did not identify that fact as a basis in the analysis of Dr. Bradford's findings.  Moreover, Dr. Klyop and Dr. Bolz had specifically stated that there were new and material changes in Anthony's post-December 2011 file, including a "new diagnosis of L[eft] eye vision loss, which results in additional limitations."  *Id.* at 663, 698.  Instead of fully considering Dr. Bradford's examination findings and the resulting limitations opined by Dr. Klyop and Dr. Bolz, the ALJ essentially treated the matter as a credibility issue, indicating: "... this is still another situation where the claimant's allegations are far in excess of what the medical evidence shows."  *Id.* at 519.

The Commissioner argues that claimant's reported vision problems were inconsistent throughout the record.  (R. 16, PageID #: 1791.)  The ALJ did not base his RFC finding on that basis, however.  The court also notes that while ALJ's decision discounted Dr. Bradford's opinion, it is silent regarding the visual limitations opined by Dr. Klyop and Dr. Bolz, offers no express basis to reject their visual assessments, and fails to explain how the ALJ resolved the conflict between their assessed visual limitations and the RFC.

15

Nonetheless, it is well settled that an ALJ is not required to discuss every piece of evidence in the record to support his decision. *Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (citing *Thacker v. Commissioner*, 99 Fed. Appx. 661, 665 (6th Cir. 2004).)  An ALJ, however, is required to explain why he did not include the limitations from an opinion of a medical source in his determination of the claimant's RFC. *Moscorelli*, 2016 WL 4486851, at *3 (citing *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011)).  This is particularly important where two state consultants imposed the same visual limitations based on the physical exam from a third consultant, and the ALJ's decision accorded "great weight" to the opinions in question without addressing their assessed visual-impairments (R. 11, tr., at 516).  SSR 96-8p provides that "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Moscorelli*, 2016 WL 4486851, at *3 (quoting SSR 96-8p, 1996 WL 374184, at *7); *see also Stubbs v. Berryhill*, No. 1:17CV2498, 2018 WL 5255140, at *14 (N.D. Ohio Oct. 22, 2018) (same).

Although the ALJ incorporated the limitation that Anthony must avoid all hazards, *see* R. 11, tr., at 505, 663, 697, the ALJ failed to mention the other visual limitations opined by Dr. Klyop and Dr. Bolz and did not explain why he apparently rejected them. *See, e.g.*, *Fleischer*, 774 F. Supp. 2d at 881.  The court cannot conclude that this error was harmless.

Further, the ALJ did not include the visual impairments opined by Dr. Klyop and Dr. Bolz in his questioning of the vocational expert (R. 11, tr., at 570-72), who found that the claimant would be able to perform the requirements of representative occupations such as Document Specialist, DOT 259.587-018, Bench Assembler, DOT 706.684-030, and Food and

16

Beverage Order Clerk, DOT 209.567-014, which finding was then incorporated into the ALJ's decision. (R. 11, tr., at 520, 571.) As pointed out by claimant, each of these occupations requires the ability to frequently use near acuity. (R. 15, PageID #: 1778-1779; *see Selected Characteristics of Occupations*, DOT 259.587-018, DOT 706.684-030, and DOT 209.567-014.) In addition, the Bench Assembler requires the ability to occasionally use depth perception. (*Selected Characteristics of Occupations*, DOT 706.684-030.) Thus, the ALJ's omission—not addressing the near acuity and depth perception limitations opined by Dr. Klyop and Dr. Bolz— is not harmless error.

The ALJ's hypothetical to the VE (and the ALJ's RFC) omitted the visual limitations opined by Dr. Klyop and Dr. Bolz. Although the ALJ need only incorporate those limitations accepted as credible into the hypothetical questions, *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993), 987 F.2d at 1235), the ALJ's decision fails to explain whether he considered the more restricted visual limitations opined by Dr. Klyop and Dr. Bolz. In light of the medical evidence in the record, the court cannot determine whether the ALJ's hypothetical adequately incorporated Anthony's limitations. Without the ALJ explaining why he did not find it necessary to include these visual limitations, the court is left to speculate. Accordingly, the VE's testimony does not constitute substantial evidence to support the ALJ's decision at Step Five and the court recommends remand.

## VIII.  CONCLUSION

The undersigned recommends that the Commissioner's final decision be vacated and remanded, for the reasons set forth above.  While the undersigned makes no specific finding regarding claimant's credibility or the ALJ's ultimate conclusion—that claimant was not disabled within the meaning the Social Security Act—the court recommends remand to allow the administrative law judge to weigh the state agency medical consultants' opinions, explain whether the visual limitations are supported by the evidence of record and how they impact the agency's determination.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date:  January 23, 2019

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).